UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IRVING BRONSTEIN, et al., <br><br>  Plaintiffs, <br><br> v. <br><br> U.S. CUSTOMS AND BORDER PROTECTION, et al., <br><br>  Defendants. | Case No.  15-cv-02399-JST <br><br> **ORDER DENYING MOTION TO TRANSFER; GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS** <br><br> Re: ECF Nos. 15, 16 |

Before the Court are Defendant Princess Cruise Lines, Ltd.'s Motion to Transfer Venue, ECF No. 15, and Defendants U.S. Customs and Border Protection and the United States of America's Motion to Dismiss, ECF No. 16.  For the reasons set forth below, the Court will deny the motion to transfer and grant in part and deny in part the motion to dismiss.

**I.   BACKGROUND**[1]

   **A.   Factual History**

Plaintiffs allege that on June 29, 2013, while they were aboard a cruise ship at port in San Francisco, California, U.S. Customs and Border Protection ("CBP") agents randomly searched Plaintiffs Troy Bronstein and Brian Wright's cabin and forced them to leave the cabin "by threat of force."  Id. ¶¶ 11–14.  Agents searched their room while the Plaintiffs waited in the common hallway.  Id. ¶ 15.  CBP agents claimed to have found a pipe,[2] which led to the arrest of Plaintiffs Troy Bronstein and Brian Wright.  Id. ¶ 17.  The CBP agents then searched the cabin of Plaintiffs

---

[1] For the purpose of deciding the motion to dismiss, the Court accepts as true the following factual allegations from Plaintiffs' Complaint, ECF No. 1.  See Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001).

[2] The Complaint does not specify the kind of pipe agents found or claimed to have found.

Irving Bronstein and Maria Christina Taylor.  Id. ¶ 18.  Plaintiffs allege that CBP agents "restricted and hindered the freedom of movement of all four Plaintiffs during the searches of both cabins under the threat of force."  Id. ¶ 19.  All four Plaintiffs then left the ship, accompanied by CBP agents.  Id. ¶ 21.  Plaintiff Irving Bronstein posted $3,600 in bail, and the criminal charges against Troy Bronstein and Brian Wright were dismissed prior to arraignment.  Id. ¶ 22.  Plaintiffs assert that the charges were dismissed "because they were groundless."  Id.  Plaintiffs further allege that the Defendants "conspired by, between and among themselves, to do—and did—the acts alleged."  Id. ¶ 10.

The Complaint alleges the following claims: (1) violations of 42 U.S.C. § 1983 against the United States, (2) false arrest against the United States, (3) false imprisonment against the United States, (4) assault against all Defendants, (5) battery against all Defendants, (6) negligence against all Defendants, (7) libel and slander against all Defendants, and (8) intentional infliction of emotional distress against all Defendants.  See generally id.  Plaintiffs seek $1.5 million in compensatory damages, $4 million in punitive damages, and attorneys' fees and costs.  Id. ¶¶ 68–69.

### B.  Jurisdiction

The Court has federal subject matter jurisdiction over Plaintiffs' civil rights and Federal Tort Claims Act ("FTCA") claims and supplemental jurisdiction over the state law claims.  28 U.S.C. §§ 1331, 1367.

### C.  Procedural History

Plaintiffs first filed their claims against the United States with the CBP for the events that occurred on June 29, 2013.  ECF No. 1 ¶ 23.  In a letter dated December 3, 2014, CBP denied the claims and noted that Plaintiffs could file suit in federal court within six months of the date of denial.  Id.

On May 29, 2015, Plaintiffs Irving Bronstein, Troy Bronstein, Maria Christina Taylor, and Brian Wright filed a Complaint against Defendants Princess Cruise Lines, Ltd. and U.S. Customs

and Border Protection.[3]  ECF No. 1.

On November 18, 2015, Princess Cruise Lines filed a motion to transfer, requesting that the case be transferred to the Central District of California.  ECF No. 15.  On November 23, 2015, the federal Defendants filed a motion to dismiss all claims.  ECF No. 16.  Princess Cruise Lines joined the motion to dismiss.  ECF No. 24.

## II.     MOTION TO TRANSFER

Defendant Princess Cruise Lines, Ltd. ("Princess Cruise Lines") requests that the Court enforce the parties' forum selection clause and transfer the action, pursuant to 28 U.S.C. § 1404(a), to the Central District of California.  ECF No. 15.  The federal Defendants and Plaintiffs oppose the motion.  ECF Nos. 22, 23.

### A.     The Forum Selection Clause

Plaintiff Troy Bronstein purchased all plaintiffs' tickets for the cruise from Princess Cruise Lines over the telephone.  ECF No. 15-2, Declaration of Lisa M. Black ¶ 5; Exs. 1, 2.  Before using the tickets, each Plaintiff was required to go online to his or her "Cruise Personalizer" to review and print travel-related documents, including his or her passenger ticket contracts.  Id. ¶ 5.  Passengers who access the Cruise Personalizer must first view and acknowledge the terms and conditions of the passenger ticket contracts.  Id. ¶¶ 9–10.  Plaintiffs accessed the Cruise Personalizer on April 5, 2013 at 3:17 p.m. and 6:56 p.m., and printed their boarding passes on June 12, 2013 and June 13, 2013.  Id. ¶ 10.  Plaintiffs would not have been able to print their boarding passes without first accepting the terms of conditions of their passenger ticket contracts in the Cruise Personalizer.  Id.

Section 15 of the passenger ticket contract contains a forum selection clause that states:

> The following provisions are for the benefit of the Carrier and any agents, independent contractors, concessionaires and/or suppliers of Carrier:

---

[3] While the caption of the Complaint lists "U.S. Customs and Border Protection, a public entity existing as an agency of the United States of America," Plaintiffs allege claims against the United States.  See, e.g., ECF No. 1 ¶¶ 24–29 (section 1983 claim against the United States), ¶¶ 30–35 (false arrest against the United States), and ¶¶ 36–41 (false imprisonment against the United States).  The Court will discuss both U.S. Customs and Border Protection and the United States and refer to those parties collectively as the federal Defendants.

> (B) Forum and Jurisdiction for Legal Action:
>
> (i) Claims for Injury, Illness or Death: All claims involving Emotional harm, bodily injury, illness to or death of any Passenger whatsoever arising out of or relating to this Passage Contract or Your Cruise shall be litigated before a court of competent jurisdiction located in the County of Los Angeles, California, U.S.A., to the exclusion of the courts of any other country, state, city, municipality, county or locale. You consent to jurisdiction and waive any objection that may be available to any such action being brought in such courts.

ECF No. 15-2, Black Decl., Ex. 3 at 28.

### B. Plaintiffs' Evidentiary Objections

Plaintiffs object to Lisa Black's Declaration and the attached exhibits, arguing that Black lacks the personal knowledge required to authenticate the documents and that Plaintiffs' passage histories and Princess Cruise Lines' passenger ticket contract are inadmissible hearsay. See ECF No. 23 at 3–5. The Court overrules the objections.

As to Plaintiffs' authentication objections, Lisa Black has personal knowledge of Plaintiffs' booking histories and records for Princess Cruise Lines. See Fed. R. Evid. 602. Black, a manager in Princess Cruise Lines' Customer Relations and Communications Department, states that she reviewed Plaintiffs' booking histories and regularly reviews such records "in the ordinary course" of her work for Princess Cruise Lines. ECF No. 15-2, Black Decl. ¶¶ 1, 4. That is all that is required.

As to Plaintiffs' hearsay objections, Plaintiffs' passenger histories fall within the hearsay exception for records of a regularly conducted activity. Federal Rule of Evidence 803(6) provides an exception to the hearsay rule and makes a business record admissible if:

> (A) the record was made at or near the time by—or from information transmitted by—someone with knowledge;
> (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
> (C) making the record was a regular practice of that activity;
> (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and
> (E) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

4

1   Fed. R. Evid. 803(6).  The phrase "other qualified witness" is broadly interpreted to require only
2   that the witness understand the record-keeping system.  United States v. Ray, 930 F.2d 1368, 1370
3   (9th Cir. 1990), as amended on denial of reh'g (Apr. 23, 1991).  Black's written testimony satisfies
4   this standard.
5       Additionally, the passenger ticket contract is not hearsay because it is not offered to prove
6   the truth of the matter asserted, but is offered for the fact that the statement was made, as Princess
7   Cruise Lines' seeks to enforce the forum selection clause.  See, e.g., Laasko v. Xerox Corp., 566
8   F. Supp. 2d 1018, 1020 (C.D. Cal. 2008) (determining that an ERISA plan with a forum selection
9   provision was admissible as nonhearsay because "it was not offered to prove the truth of the
10  matter asserted but is the matter itself").

### C. Legal Standard

Where venue is proper, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."  28 U.S.C. § 1404(a).  Section 1404(a) places "discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'"  Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988) (quoting Van Dusen v. Barrack, 376 U.S. 612, 622 (1964)).

### D. Discussion

Plaintiffs and the federal Defendants oppose the motion to transfer venue.  ECF Nos. 22, 23.  Plaintiffs argue that the forum selection clause limits claims to *state* courts.  ECF No. 23 at 5–6.  Plaintiffs also contend that Princess Cruise Lines failed to establish that Plaintiffs "are bound by any forum selection clause" and point to their objections to the evidence submitted by Princess Cruise Lines.  Id. at 6.  Finally, Plaintiffs state that the presence of the United States weighs against transfer.  Id. at 6.

The federal Defendants challenge the motion to transfer because, by statute, the claims against the United States under the FTCA must be brought in the Northern District of California.  ECF No. 22 at 2.  The federal Defendants also argue that because they are not parties to the

5

passenger ticket contract, it would be unfair to enforce the forum selection clause. Id. at 5–6.

### 1. The Forum Selection Clause Does Not Confine This Case to a State Court

Plaintiffs and Princess Cruise Lines dispute the meaning of the forum selection clause and whether the clause requiring that claims for injury, illness, or death "be litigated before a court of competent jurisdiction located in the County of Los Angeles, California, U.S.A." Plaintiffs contend that this clause designates "the county superior court." ECF No. 23 at 5. Princess Cruise Lines argues that the clause includes both state and federal courts and notes that there are two federal courthouses in the Central District of California located in Los Angeles County. ECF No. 27 at 4.

Ninth Circuit authority resolves this question in Princess Cruise Lines' favor. In Simonoff v. Expedia, Inc., 643 F.3d 1202 (9th Cir. 2011), the Ninth Circuit confronted the question of whether a forum selection clause requiring disputes be brought in the "courts in King County, Washington" allowed suits in federal court or only in the state courts of that county. The court observed that a "a forum selection clause referring to 'courts in' a state imposes a geographic limitation, not one of sovereignty," and noted that "the phrase 'courts in' a state includes any court within the physical boundaries of the state, even if the court does not derive its power and authority from the sovereignty of the state." Id. at 1205–06. The court therefore held that "a forum selection clause that vests 'exclusive jurisdiction and venue' in the courts 'in' a county provides venue in the state and federal courts located in that county." Id. at 1207; see also Wood v. iGate Techs., Inc., No. 15-CV-00799-JD, 2015 WL 4880653, at *2 (N.D. Cal. Apr. 22, 2015) (holding that "since the venue clause here allows litigation in 'any court' in Alameda County, it is not limited to state courts").

The Court concludes that the Princess Cruise Lines forum selection clause permits litigation in either state or federal court in Los Angeles County.

### 2. The Forum Selection Clause Is Valid

Plaintiffs next argue that the forum selection clause is not valid because they did not consent to it. The evidence submitted by Princess Cruise Lines is flatly to the contrary, and shows

6

without question that Plaintiffs consented to the forum selection clause.

Absent other arguments regarding the enforceability of the clause, the Court begins with the presumption that the forum selection clause is "prima facie valid." Carnival Cruise Lines, Inc. v. Shute, 499 U.S. 585, 589 (1991) (quoting The Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 10 (1972)). A forum selection clause may be deemed unreasonable, and a court may decline to enforce it, under the following circumstances:

> (1) if the inclusion of the clause in the agreement was the product of fraud or overreaching; (2) if the party wishing to repudiate the clause would effectively be deprived of his day in court were the clause enforced; and (3) if enforcement would contravene a strong public policy of the forum in which suit is brought.

Holland Am. Line Inc. v. Wartsila N. Am., Inc., 485 F.3d 450, 457 (9th Cir. 2007)

None of these factors supports the invalidity of the Princess Cruise Lines forum selection clause. Plaintiffs do not contend that the forum selection clause was the result of fraud or overreaching, or that they would be deprived of their day in court if the case is transferred to the Central District of California. And this district has no particular public policy that would anchor this lawsuit here; a federal court in the Central District is just as capable of applying California law as this one would be.

The Court concludes that the forum selection clause is valid.

### 3. Transfer of Venue

In deciding a motion to transfer under section 1404, a court ordinarily weighs "a number of case-specific factors." Id.

> [T]he court may consider: (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof.

Jones v. GNC Franchising, Inc., 211 F.3d 495, 498–99 (9th Cir.2000). When venue is putatively governed by a valid forum selection clause, however, this calculus changes in three ways. See Atl. Marine Constr. Co., Inc. v. U.S. Dist. Court for W. Dist. of Texas, 134 S. Ct. 568, 581 (2013).

First, the court may not give any weight to the plaintiff's choice of forum. Id. Second, the court may not consider the parties' private interests. Id. at 582. Third, if venue is transferred, the original venue's choice-of-law rules will not apply. Id. Thus, when a court considers a motion to transfer venue involving a valid forum selection clause, it may consider only public interest factors. Id. "In all but the most unusual cases, therefore, 'the interest of justice' is served by holding parties to their bargain." Id. at 583.

But this is not the usual case. In addition to their claims against Princess Cruise Lines, Plaintiffs have also brought claims under the FTCA against the federal Defendants, which – as Princess Cruise Lines concedes – require venue in either the judicial district where plaintiffs reside or where the acts giving rise to the claims occurred. 32 C.F.R. 750.32(a); 28 U.S.C. § 1402(a). Both of these provisions point to the Northern District of California, because Plaintiffs allege they reside in this District and because the acts in the Complaint take place in San Francisco, California. ECF No. 22 at 6. Additionally, as both Plaintiffs and federal Defendants stress, the federal Defendants are not parties to the Princess passenger ticket contract, and it would be unfair to bind them to the contract when they had no knowledge of the contract's terms. See id. at 5–6.[4]

On reply, Princess Cruise Lines concedes that the federal Defendants did not sign the forum selection clause Princess Cruise Lines seeks to enforce against Plaintiffs, and therefore seeks to recast its motion as one that seeks transfer only of Plaintiffs' claims against Princess Cruise Lines. The Court concludes that Princess Cruise Lines has not met its burden to show that such a transfer would be in the public interest.

First, splitting the claims contravenes the federal policy in favor of "efficient resolution of controversies." In re TFT-LCD (Flat Panel) Antitrust Litig., No. C 13-3349 SI, 2014 WL 1477748, at *1-2 (N.D. Cal. Apr. 14, 2014). All of Plaintiffs' claims arise out of the "same transaction, occurrence, or series of transactions or occurrences." Fed. R. Civ. P. 20(a). Additionally, "questions of law or fact common to all defendants will arise in the action." Id.

---

[4] There are circumstances in which a contractual forum selection clause can be enforced against a non-party to the contract, Manetti-Farrow, Inc. v. Gucci Am., Inc., 858 F.2d 509, 514 n.5 (9th Cir. 1988), but no one here argues that this is such a case.

Lopping off the tort claims against Princess Cruise Lines would require that those claims be tried separately from Plaintiffs' substantively similar claims against the United States. This would be "needlessly inconvenient and burdensome [and] plainly contrary to the policy of the federal judiciary of promoting the consistent and complete adjudication of disputes." Frigate Ltd. v. Damia, No. C 06-04734 CRB, 2007 WL 127996, at *3 (N.D. Cal. Jan. 12, 2007); see also Jes Solar Co. v. Matinee Energy, Inc., No. CV 12-626 TUC DCB, 2014 WL 2885476, at *2 (D. Ariz. June 25, 2014) (declining to dismiss the action for forum non conveniens because the action would proceed "piecemeal" and "would not serve the interests of justice and would not be judicially economical"); Stephen E. Sachs, Five Questions After *Atlantic Marine*, 66 HASTINGS L.J. 761, 773 (2015) ("A number of district courts, finding transfer inappropriate for the action as a whole, have used their discretion to refuse to sever cases if the parties 'would be forced to proceed piecemeal' in separate courts.").

Second, Princess Cruise Lines has not established that the action could have been brought in the Central District of California. See 28 U.S.C. § 1404(a) ("[A] district court may transfer any civil action to any other district or division *where it might have been brought.*") (emphasis added). Plaintiffs assert only state law claims for battery, assault, negligence, libel and slander, and intentional infliction of emotional distress against Princess Cruise Lines – but no federal claims. ECF No. 1. Plaintiffs allege, and Princess Cruise Lines does not dispute, that both parties are citizens of California. Id. ¶¶ 1–4, 6; ECF No. 11 ¶ 6. Accordingly, the Court has federal subject matter jurisdiction over the federal defendants, but only supplemental jurisdiction over Princess Cruise Lines. If the federal claims were severed, a court in the Central District of California could not exercise pendent jurisdiction over the severed claims, and Princess Cruise Lines does not explain how the Central District would otherwise have subject matter jurisdiction over state law claims between non-diverse parties.

In short, the Court finds that this is the "unusual" case in which justice is not served by enforcing a forum selection clause. Plaintiffs' FTCA claims must be heard in the Northern District of California, and the federal Defendants are not parties to the passenger ticket contracts. Splitting the claims would not promote efficient resolution of this controversy. And finally,

9

1  Princess Lines has not shown that the Central District of California would be able to hear the
2  severed claims.
3    The Court finds that the public interest would be best served by keeping this case in the
4  Northern District of California and denies Princess Cruise Lines' motion to transfer venue.

### III. MOTION TO DISMISS

The federal Defendants move the Court to dismiss the claims against them for lack of subject matter jurisdiction, failure to state a claim for relief, and insufficient service of process. ECF No. 16. Princess Cruise Lines joins the federal Defendants' motion as to Plaintiffs' tort claims. ECF No. 24.

#### A.   Legal Standard

##### 1.   Rule 12(b)(1): Lack of Subject Matter Jurisdiction

Federal courts are courts of limited jurisdiction. Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994). A defendant may raise the defense of lack of subject matter jurisdiction by motion pursuant to Federal Rule of Civil Procedure 12(b)(1). The plaintiff bears the burden of establishing subject matter jurisdiction. Kokkonen, 511 U.S. at 377.

A motion to dismiss for lack of subject matter jurisdiction Rule 12(b)(1) may be "facial or factual." Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004). Here, the United States bring a facial, rather than factual, challenge. "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." Id. "By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." Id. In considering a facial attack, the court "determine[s] whether the complaint alleges 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Terenkian v. Republic of Iraq, 694 F.3d 1122, 1131 (9th Cir. 2012) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

##### 2.   Rule 12(b)(6): Failure to State a Claim

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the...claim is and the grounds upon which it rests." Fed. R. Civ. P. 8(a)(2); Bell Atl. Corp. v. Twombly, 550 U.S.

544, 555 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. The Court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." Knievel v. ESPN, 393 F.3d 1068, 1072 (9th Cir. 2005).

### 3. Rule 12(b)(5): Failure to Complete Service

A failure to fulfill service requirements serves as grounds for dismissal of the action. Fed. R. Civ. P. 12(b)(5). If the defendant has not been served within the time frame designated by Rule 4(m), the court "must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m). Where the validity of service is contested, the burden of demonstrating good cause is on the party claiming proper service to establish that service was valid under Rule 4. Id. If a plaintiff fails to show good cause for why service was not made, a court should dismiss the defendant without prejudice. Townsel v. Contra Costa Cty., Cal., 820 F.2d 319, 320 (9th Cir. 1987).

### B. Discussion

The Court considers the claims against each Defendant in turn.

#### 1. U.S. Customs and Border Protection

The federal Defendants requests that the Court dismiss CBP from the action, arguing that Plaintiffs failed to complete proper service on CBP despite repeated opportunities to do so. ECF No. 16 at 11.

Under Rule 4(m), Plaintiffs were required to serve Defendants with the complaint within 120 days of filing it.[5] Fed. R. Civ. P. 4(m). In order to serve CBP, a United States agency, Plaintiffs were required to "serve the United States and also send a copy of the summons and of

---

[5] Plaintiffs filed their Complaint prior to the most recent amendments to the Federal Rules of Civil Procedure. Under the currently effective version of Rule 4(m), a plaintiff must serve a defendant within 90 days of filing the complaint.

11

the complaint by registered or certified mail to the agency . . . ." Fed. R. Civ. P. 4(i)(2).

Plaintiffs filed this case on May 29, 2015. See ECF No. 1. Plaintiffs served the United States but failed to deliver a copy of the summons and Complaint to CBP. ECF No. 16 at 8. Plaintiffs served the summons and Complaint on the U.S. Attorney's Office for the Northern District of California via personal service and on the U.S. Attorney General via certified mail. ECF Nos. 8, 9. Federal Defendants' counsel notified Plaintiffs that they had not yet completed proper service on CBP, and provided Plaintiffs' counsel with CBP's address, but Plaintiffs still failed to complete service. See ECF No. 16-1, Decl. of Jennifer S. Wang, Ex. A. Plaintiffs do not argue that service of process was adequate as to CBP, and they do not provide good cause to excuse their failure to serve CBP. The Court previously notified Plaintiffs that Defendants could be dismissed if Plaintiffs failed to serve the Complaint and did not demonstrate good cause for the lack of service. See ECF No. 4.

Because Plaintiffs have not shown good cause for their failure to serve CBP within the 120-day mandated by Rule 4(m), the Court dismisses CBP from this action.[6]

### 2. The United States

#### a. Claim One: Section 1983

The United States, as sovereign, is immune from suit unless it unequivocally waives its sovereign immunity. United States v. Mitchell, 445 U.S. 535, 538 (1980). "A court lacks subject matter jurisdiction over a claim against the United States if it has not consented to be sued on that claim." Balser v. Dep't of Justice, Office of U.S. Tr., 327 F.3d 903, 907 (9th Cir. 2003).

---

[6] The Court further notes that even if the Court did not dismiss CBP under Rule 12(b)(5), it would dismiss Plaintiffs' claims against CBP under Rule 12(b)(1). To the extent Plaintiffs allege a section 1983 claim against CBP, CBP is a federal agency, and Plaintiffs have not alleged that CBP agents engaged in a conspiracy with state actors or otherwise acted under the color of state law. See Chatman v. Hernandez, 805 F.2d 453, 455 (1st Cir. 1986) (per curiam) ("Section 1983 applies to persons acting 'under color of state law' and not to persons acting pursuant to federal law."); Hampton v. Hanrahan, 600 F.2d 600, 623 (7th Cir. 1979) (explaining that a section 1983 claim may lie against federal officers "when [they] are engaged in a conspiracy with state officials to deprive constitutional rights"). And to the extent Plaintiffs allege claims under the FTCA against CBP, the United States is the "sole party which may be sued for personal injuries arising out of the negligence of its employees. Individual agencies of the United States may not be sued." Allen v. Veterans Admin., 749 F.2d 1386, 1388 (9th Cir. 1984).

Plaintiffs allege that the United States violated "constitutional protections" set out in 42 U.S.C. § 1983 and that the "treatment of Plaintiffs, as alleged, including the false arrest and false imprisonment that occurred, falls squarely within the prohibitions of the statute." ECF No. 1 ¶¶ 26–27.

Sovereign immunity bars Plaintiffs' section 1983 claim against the United States. See Jachetta v. United States, 653 F.3d 898, 908 (9th Cir. 2011) ("We find no evidence in either statute that Congress intended to subject federal agencies to § 1983 and § 1985 liability. To the contrary, §§ 1983 and 1985 impose liability upon a 'person,' and a federal agency is not a 'person' within the meaning of these provisions.").

The Court dismisses Plaintiffs' § 1983 claim with prejudice but gives leave to amend the Complaint to allege a Bivens claim if they can plausibly do so.[7]

### b. Federal Tort Claims Act

Under the Federal Tort Claims Act ("FTCA"), the United States waives sovereign immunity for the torts committed by federal employees acting in the scope of their employment. Terbush v. United States, 516 F.3d 1125, 1128 (9th Cir. 2008). The United States can be sued "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." Id. at 1128–29 (quoting 28 U.S.C. § 1346(b)(1)). The law of the state in which the government employee committed the tort determines the scope of sovereign immunity. See Schwarder v. United States, 974 F.2d 1118, 1122 (9th Cir. 1992) ("If the law of that state makes private parties liable for wrongful deaths, then the United States is liable for the same."); see also 28 U.S.C. § 1346(b).

---

[7] Plaintiffs might conceivably allege violations of their constitutional rights against federal employees and officials acting in their individual capacity under Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971). To state a Bivens action, a plaintiff must plead: "(1) that a right secured by the Constitution of the United States was violated, and (2) that the alleged deprivation was committed by a federal actor." Abpikar v. Sanchez, No. C 12-3982 RMW PR, 2013 WL 664679, at *1 (N.D. Cal. Feb. 21, 2013) (citing Van Strum v. Lawn, 940 F.2d 406, 409 (9th Cir. 1991)). There is no Bivens remedy against a federal agency. See W. Radio Servs. Co. v. U.S. Forest Serv., 578 F.3d 1116, 1119 (9th Cir. 2009). Instead, "[b]ecause vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009).

The abrogation of immunity from suit in tort, however, is not absolute. Plaintiffs cannot bring "any claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights," except that claims for assault, battery, false imprisonment, false arrest, abuse of process and malicious prosecution may be brought against "investigative or law enforcement officers of the United States Government." 28 U.S.C. § 2680(h).

### i.   Claims Two and Three: False Arrest and False Imprisonment

Under California law, false arrest is not a separate tort, but a subcategory of false imprisonment. Watts v. Cty. of Sacramento, 256 F.3d 886, 891 (9th Cir. 2001) (citing to Asgari v. City of Los Angeles, 15 Cal. 4th 744, 753 n.3 (1997)). To prevail on a claim for false imprisonment, the plaintiff must establish "nonconsensual, intentional confinement of a person, without lawful privilege, for an appreciable length of time, however short." Fermino v. Fedco, Inc., 7 Cal. 4th 701, 715 (1994) (internal citations omitted). An officer is not liable for false arrest "if the arrest was lawful, or the peace officer, at the time of the arrest, had reasonable cause to believe the arrest was lawful." O'Toole v. Superior Court, 140 Cal. App. 4th 488, 511 (2006) (internal quotations omitted).

With respect to searches, "[t]he Fourth Amendment proscribes unreasonable searches. As a general rule, searches conducted without a warrant and probable cause are presumptively unreasonable, subject to a number of specifically established and well-delineated exceptions." United States v. Rambo, 74 F.3d 948, 953 (9th Cir. 1996) (internal quotations omitted). The federal Defendants here rely on the so-called "border search" exception as applied to 19 U.S.C. § 1581(a). ECF No. 16 at 14.

Section 1581(a) provides as follows:

> Any officer of the customs may at any time go on board of any vessel or vehicle at any place in the United States or within the customs waters or, as he may be authorized, within a customs-enforcement area established under the Anti-Smuggling Act [19 U.S.C. 1701 et seq.], or at any other authorized place, without as well as within his district, and examine the manifest and other documents and papers and examine, inspect, and search the vessel or vehicle and every part thereof and any person, trunk, package, or

14

> cargo on board, and to this end may hail and stop such vessel or vehicle, and use all necessary force to compel compliance.

Section 1581(a) "grants broad authority for customs searches." United States v. Tilton, 534 F.2d 1363, 1364 (9th Cir. 1976).

Generally, "[b]ecause searches at the international border of both inbound and outbound persons or property are conducted 'pursuant to the long-standing right of the sovereign to protect itself,' they generally require neither a warrant nor individualized suspicion." United States v. Seljan, 547 F.3d 993, 999 (9th Cir. 2008) (en banc) (quoting United States v. Ramsey, 431 U.S. 606, 616 (1977)).  The government's "interest in preventing the entry of unwanted persons and effects is at its zenith at the international border." United States v. Flores–Montano, 541 U.S. 149, 152 (2004).

The Supreme Court has left open the question of "whether, and under what circumstances, a border search might be deemed 'unreasonable' because of the particularly offensive manner in which it is carried out." Flores-Montano, 541 U.S. at 155 n.2 (quoting Ramsey, 431 U.S. at 618 n.13).  The Court reserved this possibility, for example, in the case of "highly intrusive searches of the person" or searches of property that are "so destructive as to require particularized suspicion." Id. at 152, 156; see United States v. Montoya de Hernandez, 473 U.S. 531, 541 (1985) (holding that reasonable suspicion was required to detain at the border and to search the alimentary canal of a traveler).

Although the federal Defendants seek to invoke the border search exception, it is not clear from the Complaint that this search actually occurred at the border.  Plaintiffs allege only that customs agents entered their cabin while they were at port in San Francisco, California.  ECF No. 1 ¶ 11.  Because Plaintiffs do not allege the cruise ship's prior port of origin, it is not possible for the Court to conclude at the pleading stage that the border exception applies.  Compare United States v. Dobson, 781 F.2d 1374, 1376 (9th Cir. 1986) ("Customs officials may thus conduct a border search of any ship arriving in port which is known to have sailed from international waters.").

Instead, the Court must analyze Plaintiffs' claims based on the legal standard requiring CBP agents to have probable cause to justify their cabin searches.  See United States v. Graham,

15

117 F. Supp. 2d 1015, 1022 (W.D. Wash. 2000) (granting the Defendant's motion to suppress where the government did not have probable cause or consent to search a vehicle on a domestic ferry). Plaintiffs have plausibly pleaded claims for false arrest and false imprisonment under this standard.

The United States argues that agents' temporary detention of Plaintiffs' was "wholly appropriate" because it was appurtenant to a lawful search. ECF No. 16 at 16. But the Complaint does not contain any facts suggesting that the searches were lawful. Plaintiffs allege that CBP agents pushed through Troy Bronstein and Brian Wright's cabin door and announced the agents were conducting a random search. ECF No. 1 ¶ 12. During this search, Plaintiffs Troy Bronstein and Brian Wright were required in sit down in the hallway in front of the cabin. Id. ¶ 15. The search was "lengthy and messy" and was then expanded to the cabin of Plaintiffs Irving Bronstein and Maria Taylor. Id. ¶ 18. All four Plaintiffs allege that CBP agents "restricted and hindered the freedom of movement" during the searches of the cabins. Id. ¶ 19. The Court cannot conclude that the CBP agents' searches of the cabins were lawful as a matter of law and consequently cannot conclude that the agents could detain Plaintiffs while the searches were conducted. Moreover, since Plaintiffs allege that the only basis for Troy Bronstein and Brian Wright's arrest was based on illegally seized "pipe," Plaintiffs have also properly alleged that the arrest was unlawful. Cf. United States v. Taheri, 648 F.2d 598, 601 (9th Cir. 1981) (holding that a criminal defendant's arrest was illegal because it was supported only by illegally seized evidence).

Plaintiffs have sufficiently pleaded the elements of this tort by alleging that CBP agents unlawfully detained them while conducting the searches without probable cause and arrested them upon discovering illegally seized evidence. The Court denies the United States' motion to dismiss Plaintiffs' false arrest and false imprisonment claims.

### ii.   Claims Four and Five: Battery and Assault

"The elements of a battery claim in California are that (1) the defendant intentionally did an act that resulted in harmful or offensive contact with the plaintiff's person, (2) the plaintiff did not consent to the contact, and (3) the contact caused injury, damage, loss or harm to the plaintiff." Tekle v. United States, 511 F.3d 839, 855 (9th Cir. 2007). "A prima facie case for battery is not

established under California law unless the plaintiff proves that an officer used unreasonable force against him to make a lawful arrest or detention." Saman v. Robbins, 173 F.3d 1150, 1157 n.6 (9th Cir. 1999). For an assault claim under California law, a plaintiff must show that (1) the defendant threatened to touch her in a harmful or offensive manner; (2) it reasonably appeared to the plaintiff that the defendant was about to carry out the threat; (3) the plaintiff did not consent to the conduct; (4) the plaintiff was harmed; and (5) the defendant's conduct was a substantial factor in causing the harm. Tekle, 511 F.3d at 855. As with a battery claim, the force used against a plaintiff to arrest or detain him must be unreasonable. See Cortez v. United States, No. 10CV1473-L WMC, 2011 WL 1743231, at *9 (S.D. Cal. May 5, 2011).

The thin allegations of Plaintiffs' complaint do not plausibly allege that CBP agents used unreasonable force. At most, Plaintiffs allege that agents they were handcuffed while agents searched their room, and Plaintiffs were made to leave their room or otherwise restricted in their movements under an unspecified "threat of force." These actions are "consistent with generally accepted law enforcement techniques," Tekle v. United States, No. CV 01-3894-RSWL, 2009 WL 1303357, at *9 (C.D. Cal. May 8, 2009), and, without more, the Court cannot conclude they were unreasonable. See also Cook v. Torres, No. CV 13-2030 JLS SS, 2013 WL 5946072, at *9 (C.D. Cal. Nov. 5, 2013) ("Plaintiff does not allege any facts showing that Leuschen used any force in applying handcuffs on him, much less that such force was excessive. Accordingly, Plaintiff's assault and battery allegations fail to state a claim."); DeLuca v. Cty. of Los Angeles, No. CV1500344DMGMANX, 2015 WL 4451420, at *11 (C.D. Cal. July 20, 2015).

The Court will dismiss Plaintiffs' assault and battery claims without prejudice.

### iii. Claim Six: Negligence

To state a claim for negligence under California law, a plaintiff must plead sufficient facts to show "(1) duty; (2) breach; (3) causation; and (4) damages." Ileto v. Glock Inc., 349 F.3d 1191, 1203 (9th Cir.2003).

The federal Defendants argue that to the extent that Plaintiffs' negligence claim is based on the unlawful detention and arrest or excessive force, the claim fails because the CBP agents acted reasonably under the circumstances. ECF No. 16 at 17. However, as the Court has previously

17

discussed, Plaintiffs have alleged that Defendants acted unlawfully in executing their search and in effectuating Plaintiffs' detention and arrest. Because the Court denies the motion to dismiss with respect to Plaintiffs' false arrest/imprisonment claim, it will also deny the motion to dismiss as to Plaintiffs' negligence claim against the United States.

####  iv.      Claim Seven: Libel and Slander

The intentional tort exception to the FTCA excludes certain types of claims, including libel and slander. 28 U.S.C. § 2680(h); see Moore v. United Kingdom, 384 F.3d 1079, 1088 (9th Cir. 2004).

Because the FTCA does not waive the United States' immunity for libel and slander, the Court dismisses this claim without leave to amend.

####  v.      Claim Eight: Intentional Infliction of Emotional Distress

Under California law:

> A cause of action for intentional infliction of emotional distress exists when there is (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiffs suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct. A defendant's conduct is outrageous when it is so extreme as to exceed all bounds of that usually tolerated in a civilized community. And the defendant's conduct must be intended to inflict injury or engaged in with the realization that injury will result.

Hughes v. Pair, 46 Cal. 4th 1035, 1051 (2009) (citations and internal quotation marks omitted).

The federal Defendants argue that Plaintiffs have not adequately pleaded what actions taken by the CBP agents constituted outrageous conduct. Based on the Court's reading of the Complaint, however, CBP searched Plaintiffs' cabins and detained Plaintiffs without lawful privilege and subsequently arrested Plaintiffs Troy Bronstein and Brian Wright based on the discovery of illegally seized evidence. The complaint sufficiently alleges that the agents' behavior rose to the level of extreme and outrageous conduct, and Plaintiffs have stated a claim for intentional infliction of emotional distress against the United States.

### 3.      Princess Cruise Lines

Against Princess Cruise Lines, Plaintiffs allege claims for battery, assault, negligence, libel

and slander, and intentional infliction of emotional distress.  See ECF No. 1.  Plaintiffs describe the conduct of agents "employed by and acting in the course of their official duties by defendant Customs and Border Patrol" but do not describe the conduct of Princess Cruise Lines.  See id. ¶ 11.  Plaintiffs only allege that the Defendants "conspired by, between and among themselves, to do – and did – the acts alleged."  ECF No. 1 ¶ 10.  Plaintiffs then state that all Defendants "are jointly and severally liable for Plaintiffs' damages as a result."  Id.  Princess Cruise Lines argues that Plaintiffs fail to make sufficient factual allegations to support their claims.  ECF No. 24.

Aside from the bare allegation that Princess Cruise Lines conspired with CBP, Plaintiffs allege no other facts to support their contention that Princess Cruise Lines participated in the alleged torts.  Plaintiffs only recite the various elements of these torts without providing any factual information regarding the specific conduct of Princess Cruise Lines.  These allegations are too conclusory to sustain Plaintiffs' tort claims against Princess Cruise Lines.  See Iqbal, 556 U.S. at 678 ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'").

The Court dismisses the battery, assault, negligence, libel and slander, and intentional infliction of emotional distress claims against Princess Cruise Lines without prejudice.

## CONCLUSION

For the foregoing reasons, the Court denies Princess Cruise Lines' motion to transfer and grants in part and denies in part the federal Defendants' motion to dismiss.  Plaintiffs may file an amended complaint within 21 days of the date of this Order.

IT IS SO ORDERED.

Dated:  March 7, 2016

_____
JON S. TIGAR
United States District Judge

19