UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IRVING BRONSTEIN, et al.,<br><br>   Plaintiffs,<br><br>  v.<br><br>U.S. CUSTOMS AND BORDER PROTECTION, et al.,<br><br>   Defendants. | Case No.  15-cv-02399-JST<br><br>**ORDER GRANTING MOTIONS TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Re: ECF Nos. 38, 40 |

This case concerns events stemming from the search of Plaintiffs' cruise ship cabins while their ship was docked in San Francisco. Defendants Princess Cruise Lines, Ltd., ECF No. 38, and U.S. Customs and Border Protection ("CBP") and the United States, ECF No. 40, have moved to dismiss Plaintiffs' First Amended Complaint.[1]  The Court will grant both motions.

**I.    BACKGROUND**[2]

  **A.    Factual History**

On June 29, 2013, Plaintiffs were aboard a Princess Cruise Lines cruise ship at port in San Francisco, California, upon arrival from British Columbia, Canada, when CBP agents announced they were conducting a random search.  ECF No. 37 ¶¶ 11–12.  The agents forced Plaintiffs Troy Bronstein and Brian Wright to leave their cabin "by threat of force," and searched their cabin.  Id.

---

[1] While the caption of the First Amended Complaint ("FAC") lists "U.S. Customs and Border Protection, a public entity existing as an agency of the United States of America," Plaintiffs also allege a claim against the United States.  See ECF No. 37 ¶¶ 35–40 (false imprisonment against the United States).  The Court will discuss both CBP and the United States and refer to those parties collectively as the "federal Defendants."

[2] For the purpose of deciding the motions to dismiss, the Court accepts as true the following factual allegations from Plaintiffs' FAC, ECF No. 37.  See Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001).

¶¶ 12–14.  Agents searched the cabin while the Plaintiffs waited in the common hallway.  Id. ¶ 15.  CBP agents claimed to have found a pipe, which led to the arrest of Troy Bronstein and Brian Wright.  Id. ¶ 17.  The CBP agents then searched the cabin of Plaintiffs Irving Bronstein and Maria Christina Taylor.  Id. ¶ 18.  Plaintiffs allege that CBP agents "restricted and hindered the freedom of movement of all four Plaintiffs during the search of both cabins under the threat of force."  Id. ¶ 19.  All four Plaintiffs left the ship, accompanied by CBP agents.  Id. ¶ 21.  Plaintiff Irving Bronstein posted $3,600 in bail, and the criminal charges against Troy Bronstein and Brian Wright were dismissed prior to arraignment.  Id. ¶ 22.  Plaintiffs allege that the charges were dismissed "because they were groundless."  Id.

Plaintiffs assert that the CBP agents lacked a warrant and that "[t]he search by CBP agents was not based on any particularized suspicion of illegal activity, wrong-doing, or potential threat to America and its borders."  Id. ¶ 23.  Plaintiffs further allege that CBP agents falsely claimed that the search was "random."  Id.  Plaintiffs additionally state that the search and subsequent arrest were based on the erroneous belief by CBP agents and Princess Cruise Lines that Plaintiff Troy Bronstein had the passport number of an individual of concern to the United States.  Id. ¶ 24.

Plaintiffs allege that, on more than one occasion prior to the events giving rise to this action, Troy Bronstein was subject to "prolonged search before re-entering the United States."  Id. ¶ 25.  Troy Bronstein complained to United States Senator Dianne Feinstein about these prolonged searches, and Senator Feinstein's office reported that there was "some sort of mix-up" regarding Plaintiff Troy Bronstein and another individual.  Id.

Plaintiffs assert that Princess Cruise Lines erroneously recorded Plaintiff Troy Bronstein's passport number or other identifying information, resulting in unwarranted suspicion, the search by CBP agents, and the subsequent arrest.  Id. ¶ 27.  CBP agents then failed to verify the accuracy of Plaintiff Troy Bronstein's identifying information before commencing the search.  Id.  Plaintiffs further allege that the Defendants "conspired by, between and among themselves, to do—and did—the acts alleged."  Id. ¶ 10.

Plaintiffs' First Amended Complaint ("FAC") alleges the following claims: (1) violations of 42 U.S.C. § 1983 against agents of the United States; (2) false imprisonment against the United

2

1  States; (3) battery against all Defendants; (4) assault against all Defendants; (5) negligence against
2  all Defendants; and (6) intentional infliction of emotional distress against all Defendants. See
3  generally id. Plaintiffs seek $1.5 million in compensatory damages, $4 million in punitive
4  damages, and attorneys' fees and costs. Id. ¶¶ 62–63.

### B. Procedural History

Plaintiffs first filed administrative tort claims with the CBP in connection with the events that occurred on June 29, 2013. Id. ¶ 28. In a letter dated December 3, 2014, CBP denied the claims and noted that Plaintiffs could file suit in federal court within six months of the date of denial. Id.

On May 29, 2015, Plaintiffs Irving Bronstein, Troy Bronstein, Maria Christina Taylor, and Brian Wright filed a complaint against Princess Cruise Lines and CBP. ECF No. 1.

On November 18, 2015, Princess Cruise Lines filed a motion to transfer, requesting that the case be transferred to the Central District of California. ECF No. 15. On November 23, 2015, the federal Defendants filed a motion to dismiss all claims, which Princess Cruise Lines joined. ECF Nos. 16, 24.

The Court denied Defendant Princess Cruise Lines' motion to transfer. ECF No. 35 at 10. The Court also dismissed CBP from this action because Plaintiffs failed to serve CBP as required by Federal Rule of Civil Procedure 4(m). Id. at 10, 12. The Court then dismissed Plaintiffs' claim for violation of 42 U.S.C. § 1983 with prejudice, but gave Plaintiffs leave to amend their complaint to allege a claim under Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971). Id. at 13. The Court granted the motion to dismiss as to Plaintiffs' claims for battery, assault, libel, and slander against the federal Defendants, but denied the motion as to Plaintiffs' claims for false imprisonment, negligence, and intentional infliction of emotional distress against the federal Defendants. Id. at 13–18. Lastly, the Court dismissed all claims against Princess Cruise Lines. Id. at 19.

On March 25, 2016, Plaintiffs filed their FAC against Princess Cruise Lines and the federal Defendants. ECF No. 37.

On April 7, 2016, Princess Cruise Lines filed a motion to dismiss. ECF No. 38. On April

8, 2016, the federal Defendants also filed a motion to dismiss. ECF No. 40.

## II. JURISDICTION

The Court has federal subject matter jurisdiction over Plaintiffs' civil rights and Federal Tort Claims Act ("FTCA") claims and supplemental jurisdiction over the state law claims. 28 U.S.C. §§ 1331, 1367.

## III. LEGAL STANDARD

### A. Rule 12(b)(1): Lack of Subject Matter Jurisdiction

"Federal courts are courts of limited jurisdiction." Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994). A defendant may raise the defense of lack of subject matter jurisdiction by motion pursuant to Federal Rule of Civil Procedure 12(b)(1). The plaintiff bears the burden of establishing subject matter jurisdiction. Kokkonen, 511 U.S. at 377.

A Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction may be "facial or factual." Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004). Here, the Defendants bring facial, rather than factual, challenges. "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." Id. "By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." Id. In considering a facial attack, the court "determine[s] whether the complaint alleges 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Terenkian v. Republic of Iraq, 694 F.3d 1122, 1131 (9th Cir. 2012) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

### B. Rule 12(b)(6): Failure to State a Claim

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Fed. R. Civ. P. 8(a)(2); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that

4

1   the defendant is liable for the misconduct alleged." Id.  The Court must "accept all factual

2   allegations in the complaint as true and construe the pleadings in the light most favorable to the

3   nonmoving party." Knievel v. ESPN, 393 F.3d 1068, 1072 (9th Cir. 2005).

4   "Dismissal with prejudice and without leave to amend is not appropriate unless it is clear

5   on de novo review that the complaint could not be saved by amendment." Eminence Capital, LLC

6   v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003).  In the absence of factors such as "undue

7   delay, bad faith or dilatory motive," leave to amend should be freely given. Foman v. Davis, 371

8   U.S. 178, 182 (1962).  However, a district court's discretion to deny leave to amend is broader

9   where the plaintiff has previously filed an amended complaint. Miller v. Yokohama Tire Corp.,

10  358 F.3d 616, 622 (9th Cir. 2004).

## IV.     DISCUSSION

Princess Cruise Lines moves the Court to dismiss all claims against it for failure to state a claim pursuant to Rule 12(b)(6).  ECF No. 38.  The federal Defendants move the Court to dismiss all claims against them for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) and for failure to state a claim pursuant to Rule 12(b)(6).  ECF No. 40.

The Court considers the claims against each Defendant in turn.

### A.      U.S. Customs and Border Protection

In the federal Defendants' first motion to dismiss, the federal Defendants requested that the Court dismiss CBP from the action, arguing that Plaintiffs failed to complete proper service on CBP despite repeated opportunities to do so.  ECF No. 16 at 11.  In its March 7, 2016 Order, the Court dismissed CBP from this action because Plaintiffs failed to timely serve CBP and failed to show good cause for that failure.  ECF No. 35 at 12.  Nonetheless, Plaintiffs' FAC again names CBP as a defendant.  See generally ECF No. 37.

This matter does not require lengthy discussion.  CBP has never been properly served and remains dismissed from this action.[3]

---

[3] The Court's prior Order also noted that even if the Court did not dismiss CBP under Rule 12(b)(5), it would dismiss Plaintiffs' claims against CBP under Rule 12(b)(1).  See ECF No. 35 at 12 n.6.  To the extent Plaintiffs allege a section 1983 claim against CBP, CBP is a federal agency, and Plaintiffs have not alleged that CBP agents engaged in a conspiracy with state actors or

United States District Court
Northern District of California

**B.     The United States**

**1.     Claim One: Section 1983**

The United States, as sovereign, is immune from suit unless it unequivocally waives its sovereign immunity. United States v. Mitchell, 445 U.S. 535, 538 (1980). "A court lacks subject matter jurisdiction over a claim against the United States if it has not consented to be sued on that claim." Balser v. Dep't of Justice, Office of U.S. Tr., 327 F.3d 903, 907 (9th Cir. 2003).

Plaintiffs allege that the United States violated "constitutional protections" set out in 42 U.S.C. § 1983. ECF No. 37 ¶ 31. Plaintiffs further allege that "the false imprisonment, assault, battery, negligence, and intentional infliction of emotional distress" committed by unnamed "agents and employees of CBP," acting "under color of federal law," "constituted a violation of the Fourth Amendment to the United States Constitution prohibiting unlawful searches and seizures, and the substantive and procedural provisions and rights enumerated in the due process clause of the 14th Amendment." ECF No. 37 ¶ 32.

Sovereign immunity bars Plaintiffs' section 1983 claim against the United States. See Jachetta v. United States, 653 F.3d 898, 908 (9th Cir. 2011) ("We find no evidence in either statute that Congress intended to subject federal agencies to § 1983 and § 1985 liability. To the contrary, §§ 1983 and 1985 impose liability upon a 'person,' and a federal agency is not a 'person' within the meaning of these provisions."). The Court previously dismissed Plaintiffs' section 1983 claims against the federal Defendants with prejudice. See ECF No. 35 at 13. However, the Court gave Plaintiffs leave to amend their complaint to allege a Bivens claim against federal employees and officials acting in their individual capacity, if Plaintiffs could plausibly do so. Id.

To state a Bivens action, a plaintiff must plead: "(1) that a right secured by the Constitution of the United States was violated, and (2) that the alleged deprivation was committed by a federal actor." Abpikar v. Sanchez, No. C 12-3982 RMW PR, 2013 WL 664679, at *1 (N.D. Cal. Feb.

---

otherwise acted under the color of state law. See Chatman v. Hernandez, 805 F.2d 453, 455 (1st Cir. 1986) (per curiam) ("Section 1983 applies to persons acting 'under color of state law' and not to persons acting pursuant to federal law."). And to the extent Plaintiffs allege claims under the FTCA against CBP, the United States is the "sole party which may be sued for personal injuries arising out of the negligence of its employees. Individual agencies of the United States may not be sued." Allen v. Veterans Admin., 749 F.2d 1386, 1388 (9th Cir. 1984).

6

21, 2013) (citing Van Strum v. Lawn, 940 F.2d 406, 409 (9th Cir. 1991)). There is no Bivens remedy against a federal agency. See W. Radio Servs. Co. v. U.S. Forest Serv., 578 F.3d 1116, 1119 (9th Cir. 2009). Instead, "[b]ecause vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009).

In their FAC, the Plaintiffs continue to label their first claim as a civil rights action under 42 U.S.C. § 1983. ECF No. 37 ¶¶ 31–32. Despite this misnomer, the Court will construe the claim as a Bivens claim as Plaintiffs allege unnamed federal agents, acting "under color of federal law," violated their rights secured by the Fourth and Fourteenth Amendments. Id. ¶ 32. The federal Defendants argue that Plaintiffs' fail to allege a constitutional violation and therefore fail to sufficiently state a Bivens claim upon which relief can be granted. ECF No. 40 ¶¶ 31-32.

### a. Constitutional Violations

With respect to searches, "[t]he Fourth Amendment proscribes unreasonable searches. As a general rule, searches conducted without a warrant and probable cause are presumptively unreasonable, subject to a number of specifically established and well-delineated exceptions." United States v. Rambo, 74 F.3d 948, 953 (9th Cir. 1996) (internal quotations omitted).

The federal Defendants here rely on the so-called "border search" exception pursuant to 19 U.S.C. § 1581(a). See ECF No. 40 at 16. Section 1581(a) provides:

> Any officer of the customs may at any time go on board of any vessel or vehicle at any place in the United States or within the customs waters or, as he may be authorized, within a customs-enforcement area established under the Anti-Smuggling Act [19 U.S.C. 1701 et seq.], or at any other authorized place, without as well as within his district, and examine the manifest and other documents and papers and examine, inspect, and search the vessel or vehicle and every part thereof and any person, trunk, package, or cargo on board, and to this end may hail and stop such vessel or vehicle, and use all necessary force to compel compliance.

Section 1581(a) "grants broad authority for customs searches." United States v. Tilton, 534 F.2d 1363, 1364 (9th Cir. 1976). A ship arriving in port which is "known to have sailed from international waters" is subject to a border search. United States v. Dobson, 781 F.2d 1374, 1376 (9th Cir. 1986).

7

"Because searches at the international border of both inbound and outbound persons or property are conducted 'pursuant to the long-standing right of the sovereign to protect itself,' they generally require neither a warrant nor individualized suspicion." United States v. Seljan, 547 F.3d 993, 999 (9th Cir. 2008) (en banc) (quoting United States v. Ramsey, 431 U.S. 606, 616 (1977)).  The government's "interest in preventing the entry of unwanted persons and effects is at its zenith at the international border." United States v. Flores-Montano, 541 U.S. 149, 152 (2004).

The Supreme Court has left open the question of "whether, and under what circumstances, a border search might be deemed 'unreasonable' because of the particularly offensive manner in which it is carried out." Flores-Montano, 541 U.S. at 155 n.2 (quoting Ramsey, 431 U.S. at 618 n.13).  The Court suggested that it might reach such a result for "highly intrusive searches of the person" or searches of property that are "so destructive as to require" particularized suspicion. Id. at 152, 156. See United States v. Montoya de Hernandez, 473 U.S. 531, 541 (1985) (holding that reasonable suspicion was required to detain a traveler at the border to search the alimentary canal).

In the instant action, the allegedly violative search occurred on a cruise ship that was entering a domestic port for the first time after crossing international boundaries. See ECF No. 37 ¶ 11 (the search occurred while "at port in San Francisco, California, upon arrival from British Columbia, Canada.")  The search is therefore a border search.[4]

The Ninth Circuit has not yet weighed in on the level of suspicion, if any, required to justify searching a ship cabin arriving from a foreign port.  Other circuits are divided. Compare, e.g., United States v. Whitted, 541 F.3d 480, 488 (3d Cir. 2008) (holding that such a search "must be supported by reasonable suspicion of criminal conduct") with United States v. Alfaro-Moncada, 607 F.3d 720, 732 (11th Cir. 2010) (holding that such a search does not violate the Fourth Amendment).

As federal Defendants note, in United States v. Alfonso, the Ninth Circuit stated that "the search of private living quarters on a ship should require something more than naked suspicion"

---

[4] The Defendants moved to dismiss a prior complaint on the grounds that they were authorized to conduct a border search, but the Court denied the motion because the prior pleading did not specify that the Plaintiffs' ship had entered port at San Francisco from a foreign point of departure. ECF No. 15 at 15.  The allegations of the FAC now make those facts clear.

8

1  because "private living quarters are at least analogous to a private dwelling" and "a search of the
2  private living quarters of a ship is more intrusive than a search of other areas." 759 F.2d 728,
3  737–38 (9th Cir. 1985). However, the federal Defendants argue that this language does not
4  control here as the Alfonso holding concerned the separate issue of the constitutionality of an
5  extended border search conducted 36 hours after an initial customs search. ECF No. 40 at 18.

6        To support the argument that individualized suspicion is not required at this border search,
7  the federal Defendants cite to United States v. Rachid, wherein another court in this district found
8  the above-quote language from Alfonso to be dictum. No. C 12-00307 WHA, 2012 WL 4369314,
9  at *2 (N.D. Cal. Sept. 24, 2012). In Rachid, the court additionally found that, even if the Ninth
10 Circuit's Alfonso holding did require reasonable suspicion for a border search of private living
11 quarters on a ship, any such holding had been "undercut by the Supreme Court decision in Flores-
12 Montano in such a way that 'the cases are clearly irreconcilable.'" Id. (internal citation omitted).
13 The Rachid court further found that "any reasonable expectation of privacy [the defendant] had in
14 his cabin 'was necessarily tempered'" by his "knowledge that he would have to cross the border
15 and clear customs." Id. (quoting United States v. Seljan, 547 F.3d 993, 1002 (9th Cir. 2008)).[5]

16       This Court finds the reasoning articulated by the Rachid court persuasive. Therefore, in
17 the absence of controlling Ninth Circuit law to the contrary, the Court agrees "that there is no
18 categorical exception to the border search doctrine that requires a higher showing of suspicion to
19 search ship cabins." Rachid, 2012 WL 4369314, at *3. The search of Plaintiffs' cabins thus did
20 not violate the Fourth Amendment unless the search was "'unreasonable' because of the
21 particularly offensive manner in which it is carried out." Flores-Montano, 541 U.S. at 155 n.2

---

[5] The federal Defendants also cite People v. Laborde, wherein a California Court of Appeal held that "that the search of a passenger cabin of a cruise ship at a customs border is a routine border search, requiring no suspicion of criminal activity." 163 Cal. App. 4th 870, 877 (2008). In Laborde, the court held that it could "deduce no coherent basis for applying a higher level of Fourth Amendment protection to persons who cross the border ensconced in the arguable equivalent of 'houses' or dwellings." Id. at 878. The court went on to reason that, "[i]f a person approached the border in a recreational vehicle or motor-home used as a dwelling, no one would seriously suggest that a routine search of that conveyance could not be performed." Id. (citing California v. Carney, 471 U.S. 386, 387, 393–394 (1985) (declining to distinguish between "a fully mobile 'motor home' located in a public place" and "an ordinary sedan" for the purposes of the vehicle exception to warrant requirement for searches).

United States District Court
Northern District of California

1  (quoting Ramsey, 431 U.S. at 618 n.13).

2  Here, Plaintiffs allege only that the search of their cabins was "lengthy and messy." ECF
3  No. 37 ¶ 17. These allegations do not suggest that agents conducted a "highly intrusive search[] of
4  the person," Flores-Montano, 541 U.S. at 152, or a search of property "so destructive as to require
5  particularized suspicion," Flores-Montano, 541 U.S. at 154. Cf. id. at 152 (holding that "the
6  Government's authority to conduct suspicionless inspections at the border includes the authority to
7  remove, disassemble, and reassemble a vehicle's fuel tank"); United States v. Cortez-Rocha, 394
8  F.3d 1115, 1125 (9th Cir. 2005) (holding that the cutting open of a spare tire as part of a
9  suspicionless border search does not violate the Fourth Amendment). At most, they suggest that
10 agents consumed a lengthy period of time in conducting their search, and that they moved
11 Plaintiffs' personal possessions without restoring them to their original location. On the facts
12 alleged by Plaintiffs, the CBP agents had the lawful authority to enter and search Plaintiffs' cabin.

13 The Defendants argue that Plaintiffs' Bivens claim must be dismissed for the additional
14 and separate reason that the individual agents are protected by qualified immunity. "The doctrine
15 of qualified immunity protects government officials from liability for civil damages 'unless a
16 plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and
17 (2) that the right was "clearly established" at the time of the challenged conduct.'" Wood v. Moss,
18 134 S. Ct. 2056, 2066–67 (2014) (quoting Ashcroft v. al–Kidd, 131 S.Ct. 2074, 2080 (2011)).
19 Plaintiffs do not respond to this argument.

20 Plaintiffs have not provided any authority suggesting that Plaintiffs' right to be free from
21 search in their cabins was "clearly established" at the time of the search. In fact, as set forth
22 above, the law was at best uncertain, and many courts had held that such searches were lawful.
23 Certainly there was no "consensus of cases of persuasive authority such that a reasonable [official]
24 could not have believed that his actions were lawful." Wilson v. Layne, 526 U.S. 603, 617 (1999).
25 Thus, Plaintiffs' Bivens claims must be dismissed for this additional reason.

26 The Court dismisses Plaintiffs' Bivens claim against the unnamed federal agents. Because
27 the Court concludes that any amendment would be futile, dismissal is without leave to amend.
28

### 2. Federal Tort Claims Act

Under the Federal Tort Claims Act ("FTCA"), the United States waives sovereign immunity for the torts committed by federal employees acting in the scope of their employment. Terbush v. United States, 516 F.3d 1125, 1128 (9th Cir. 2008). The United States can be sued "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." Id. at 1128–29 (quoting 28 U.S.C. § 1346(b)(1)). The law of the state in which the government employee committed the tort determines the scope of sovereign immunity. See Schwarder v. United States, 974 F.2d 1118, 1122 (9th Cir. 1992) ("If the law of that state makes private parties liable for wrongful deaths, then the United States is liable for the same."); see also 28 U.S.C. § 1346(b).

The abrogation of immunity from suit in tort, however, is not absolute. Plaintiffs cannot bring "any claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights," except that claims for assault, battery, false imprisonment, false arrest, abuse of process and malicious prosecution may be brought against "investigative or law enforcement officers of the United States Government." 28 U.S.C. § 2680(h).

#### a. Claim Two: False Imprisonment

Under California law, false arrest is not a separate tort, but a subcategory of false imprisonment. Watts v. Cty. of Sacramento, 256 F.3d 886, 891 (9th Cir. 2001) (citing to Asgari v. City of Los Angeles, 15 Cal. 4th 744, 753 n.3 (1997)). To prevail on a claim for false imprisonment, the plaintiff must establish "nonconsensual, intentional confinement of a person, without lawful privilege, for an appreciable length of time, however short." Fermino v. Fedco, Inc., 7 Cal. 4th 701, 715 (1994) (internal citations omitted). An officer is not liable for false arrest "if the arrest was lawful, or the peace officer, at the time of the arrest, had reasonable cause to believe the arrest was lawful." O'Toole v. Superior Court, 140 Cal. App. 4th 488, 511 (2006) (internal quotations omitted).

Plaintiffs attempt to allege that their arrest was unlawful, but the facts pleaded in the FAC show otherwise. Plaintiffs state that the CBP agents claimed to have found a pipe during the

11

course of their cabin search. ECF No. 37 ¶ 17. According to the Plaintiffs, that discovery "led to the improper arrest and jailing of both plaintiffs Troy Bronstein and Brian Wright." Id. Once officers found drug paraphernalia, however, the officers had probable cause to arrest Bronstein and Wright. See Ramirez v. City of Buena Park, 560 F.3d 1012, 1023 (9th Cir. 2009) ("Probable cause to arrest exists when officers have knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe that an offense has been or is being committed by the person being arrested."). This means that the arrest was not "without lawful privilege." Fermino, 7 Cal. 4th at 715. Because amendment would be futile, the Court dismisses Plaintiffs' false imprisonment claim with prejudice.

### b. Claims Three and Four: Battery and Assault

"The elements of a battery claim in California are that (1) the defendant intentionally did an act that resulted in harmful or offensive contact with the Plaintiffs' person, (2) the plaintiff did not consent to the contact, and (3) the contact caused injury, damage, loss or harm to the plaintiff." Tekle v. United States, 511 F.3d 839, 855 (9th Cir. 2007). "A prima facie case for battery is not established under California law unless the plaintiff proves that an officer used unreasonable force against him to make a lawful arrest or detention." Saman v. Robbins, 173 F.3d 1150, 1157 n.6 (9th Cir. 1999). For an assault claim under California law, a plaintiff must show that (1) the defendant threatened to touch her in a harmful or offensive manner; (2) it reasonably appeared to the plaintiff that the defendant was about to carry out the threat; (3) the plaintiff did not consent to the conduct; (4) the plaintiff was harmed; and (5) the defendant's conduct was a substantial factor in causing the harm. Tekle, 511 F.3d at 855. As with a battery claim, the force used against a plaintiff to arrest or detain him must be unreasonable. See Cortez v. United States, No. 10CV1473-L WMC, 2011 WL 1743231, at *9 (S.D. Cal. May 5, 2011).

As stated in the Court's prior order, Plaintiffs do not plausibly allege that CBP agents used unreasonable force. ECF No. 35 at 17. At most, Plaintiffs allege that they were handcuffed while agents searched their room, and Plaintiffs were made to leave their room or otherwise restricted in their movements under an unspecified "threat of force." These actions are "consistent with generally accepted law enforcement techniques," Tekle v. United States, No. CV 01-3894-RSWL,

2009 WL 1303357, at *9 (C.D. Cal. May 8, 2009), and, without more, the Court cannot conclude they were unreasonable. See also Cook v. Torres, No. CV 13-2030 JLS SS, 2013 WL 5946072, at *9 (C.D. Cal. Nov. 5, 2013) ("Plaintiff does not allege any facts showing that Leuschen used any force in applying handcuffs on him, much less that such force was excessive. Accordingly, Plaintiffs' assault and battery allegations fail to state a claim."); DeLuca v. Cty. of Los Angeles, No. CV1500344DMGMANX, 2015 WL 4451420, at *11 (C.D. Cal. July 20, 2015).

Plaintiffs' FAC alleges no new facts to support their claims for battery and assault. See generally ECF No. 37. Because Defendants simply repeat the same arguments they previously made, the Court will again reach the same conclusion and grant the federal Defendant's motion to dismiss these claims. Further, as Plaintiffs have made no apparent effort to cure the defects in their battery and assault claims after the Court's initial dismissal of these claims with leave to amend, the Court dismisses Plaintiffs' battery and assault claims against the federal Defendants with prejudice.

### c. Claim Five: Negligence

To state a claim for negligence under California law, a plaintiff must plead sufficient facts to show "(1) duty; (2) breach; (3) causation; and (4) damages." Ileto v. Glock Inc., 349 F.3d 1191, 1203 (9th Cir. 2003).

Plaintiffs' FAC alleges that Princess Cruise Lines misrecorded Troy Bronstein's passport number "by transposing one or more numbers, or otherwise erroneously recording his passport number." ECF No. 37 ¶ 27. Plaintiffs further allege that CBP agents had an "independent duty to verify the accuracy of the identifying information of passengers before commencing a search." Id.

As the Court previously noted, CBP agents were not required to have individualized suspicion to conduct a lawful search of Plaintiffs' cabins. Accordingly, CBP also did not have a duty to verify the accuracy of the ship's manifest prior to conducting that search. Since Plaintiffs' factual allegation do not establish that the CBP agents otherwise acted negligently, the Court dismisses Plaintiffs' negligence claim with prejudice.

### d. Claim Six: Intentional Infliction of Emotional Distress

The elements of a claim for intentional infliction of emotional distress under California law

13

are as follows:

> (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiffs suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct.

Hughes v. Pair, 46 Cal. 4th 1035, 1051 (2009) (citations and internal quotation marks omitted). "A defendant's conduct is outrageous when it is so extreme as to exceed all bounds of that usually tolerated in a civilized community." Id. Furthermore, "the defendant's conduct must be intended to inflict injury or engaged in with the realization that injury will result." Id.

In this case, Plaintiffs' FAC declares that "Defendants acted with the intent to cause Plaintiffs to suffer severe emotional distress, or with reckless disregard of the likelihood that severe emotional distress would result to Plaintiffs," id. ¶ 59, but nothing supports this conclusory statement. Without additional facts, it is impossible to conclude that agents' conduct was extreme and outrageous, or that they desired to cause mental distress to Plaintiffs or recklessly disregarded the risk of causing such distress, given that they are alleged only to have conducted a lawful search, found contraband, and effected a lawful arrest. Plaintiffs' intentional infliction of emotional distress claim is dismissed with prejudice.

### C. Princess Cruise Lines, Ltd.

Plaintiffs allege claims for battery, assault, negligence, and intentional infliction of emotional distress against Princess Cruise Lines. See ECF No. 37. Plaintiffs assert that the Defendants "conspired by, between and among themselves, to do – and did – the acts alleged." ECF No. 37 ¶ 10. Plaintiffs then state that all Defendants "are jointly and severally liable for Plaintiffs' damages as a result." Id. In its March 7, 2016 Order, the Court dismissed all claims against Princess Cruise Lines because these allegations provided insufficient factual information regarding Princess Cruise Lines' conduct. ECF No. 35 at 19.

The FAC provides few new factual allegations. It now asserts that Princess Cruise Lines "mis-recorded the passport number or other identifying information for Plaintiff Troy Bronstein by transposing one or more numbers, or otherwise erroneously recording his passport number, so

14

as to trigger the unwarranted suspicion, and resulting subsequent search, when CBP agents reviewed the ship's manifest." Id. ¶ 27. Plaintiffs also now assert that CBP's allegedly "illegal and improper search and subsequent arrest" were based on an erroneous belief, held by both CBP and Princess Cruise Lines, that "Troy Bronstein had the passport number of an individual who apparently was then (or still is) of concern to the United States." Id. ¶ 24.

Once again, Plaintiffs have failed adequately to allege a claim for negligence. "The elements of a cause of action for negligence are: duty; breach of duty; legal cause; and damages." Friedman v. Merck & Co., 107 Cal. App. 4th 454, 463, 131 Cal. Rptr. 2d 885, 890 (2003). Even construing the FAC's allegations favorably to Plaintiffs, the only proximate result of Princess Cruise Lines' alleged transcription error was agents' search of Plaintiffs' cabin. Any actions taken after that were the responsibility of federal agents, who were acting independently of Princess Cruise Lines. Moreover, Princess Cruise Lines had no duty to shield Plaintiffs' contraband from the authorities, and once agents discovered that contraband, their conduct was both lawful and reasonable. Cf. Dominguez v. Shaw, No. CV 10-01173-PHX-FJM, 2011 WL 6297971, at *5 (D. Ariz. Dec. 16, 2011) ("an officer's failure to intervene in an arrest cannot be negligent if the arrest was lawful"); Shilo v. City of Portland, No. CV 04-130-AS, 2005 WL 3157563, at *1–2 (D. Or. Nov. 22, 2005) (a claim for negligent execution of a search warrant requires that officers' conduct unreasonably create a foreseeable risk to a protected interest, and that interest is diminished when the search warrant is valid).

Plaintiffs offer even less support for their claims for battery, assault, and intentional infliction of emotional distress. As the Court previously said regarding the prior complaint, "Plaintiffs describe the conduct of agents 'employed by and acting in the course of their official duties by defendant Customs and Border Patrol' but do not describe the conduct of Princess Cruise Lines." ECF No. 35 at 19. That observation remains true still. Plaintiffs offer no allegations that Princess Cruise Lines or its employees touched or threatened Plaintiffs, or that they took any action with the intention of causing Plaintiffs emotional distress. Plaintiffs also offer no argument in support of these claims in their opposition to the motion to dismiss.

Because Plaintiffs have been unable to cure the deficiencies in their pleading regarding

15

their claims against Princess Cruise Lines, those claims are dismissed with prejudice.[6]

## CONCLUSION

For the foregoing reasons, the Court dismisses Plaintiffs' FAC without leave to amend.

The Court hereby orders Defendants to provide a form of proposed judgment to the Court within 10 days of entry of this Order. Within five court days of the date of Defendants' submission, Plaintiffs are ordered to either approve the proposed final judgment as to form or to file objections to the proposed judgment. If Plaintiffs object to the proposed judgment, Defendants shall file any reply to the objections within five court days of Plaintiffs' objections. After considering the parties' submissions, the Court will issue an order entering final judgment.

IT IS SO ORDERED.

Dated: August 22, 2016

_____
JON S. TIGAR
United States District Judge

---

[6] Princess Cruise Lines also argues that Plaintiffs' claims are untimely based on the limitations period in Plaintiffs' contract of passage. "Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion. However, material which is properly submitted as part of the complaint may be considered on a motion to dismiss." Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d 1542, 1555 n. 19 (9th Cir.1990). Because the contract of passage is not part of the FAC's allegations, the Court does not consider this argument.

16